## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| JEFERSON GARCIA DA SILVA, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 1:26-cv-00357-MSM-AEM |
| Petitioner, | | |
| v. | | |
| MICHAEL NESSINGER, Warden, Donald W. Wyatt Detention Facility; PATRICIA HYDE, Field Office Director, Immigration and Customs Enforcement; MICHAEL KROL, ICE, New England Special Agent in Charge; MARKWAYNE MULLIN, Secretary of Homeland Security; and TODD BLANCHE, Acting Attorney General of the United States, | | |
| Respondents. | | |

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

Jeferson Garcia da Silva is currently in the custody of Immigration and Customs Enforcement ("ICE") at the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island. (ECF No. 1 ¶ 2.) He brings this habeas petition under 28 U.S.C. § 2241, challenging his detention, after eight years of supervised release, as unlawful and seeks immediate release from ICE custody, or in the alternative, a bond hearing before this Court or an immigration judge ("IJ") pursuant to 8 U.S.C. § 1226(a). *Id.* at 9. For the following reasons, the Court GRANTS Mr. Garcia da Silva's Petition. (ECF No. 1.)

## I.   BACKGROUND

Mr. Garcia da Silva is a citizen of Brazil.  (ECF No. 1 ¶ 1.)  He entered the United States on or about May 18, 2018, by walking across the Rio Grande River near El Paso, Texas.  (ECF No. 7 at 2.)  On the same day, he was arrested and detained by immigration officials.  *Id.*  Mr. Garcia da Silva did not raise a credible fear of persecution or a claim for asylum in 2018.[1]  On May 20, 2018, U.S. Border Patrol determined that he was inadmissible because he lacked valid entry documents under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA") and subject to expedited removal under 8 U.S.C. § 1225(b)(1).  (ECF No. 6.)  He signed a Form I-220(B) and was released subject to an Order of Supervision ("OSUP") on May 21, 2018.  (ECF No. 6-1.)

Over the past eight years, Mr. Garcia da Silva has continuously resided in the United States, settling in Watertown, Massachusetts, while checking in regularly with ICE.  (ECF No. 1 at 2.)  On June 2, 2026, ICE revoked his release by the issuance of a Notice of Revocation of Release and arrested him during a scheduled check-in at ICE's Burlington Massachusetts Field Office.  (ECF No. 6-2.)  The Government acknowledges that Petitioner "does not have any known criminal history" or "any outstanding warrants or extradition orders." (ECF No. 4 at 2 n.2.)  He is being detained at the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island. (ECF No. 1 ¶ 2.)

---

[1] Since re-detention, Petitioner has claimed a fear of return to Brazil.  U.S. Citizenship and Immigration Services ("USCIS") conducted a credible fear screening and is "finalizing its decision."  (ECF No. 4 at 2.)

## II.    DISCUSSION

The parties disagree about which provision of the INA governs Mr. Garcia da Silva's detention and what process he is owed. As the Government's power to detain a noncitizen must be grounded in a specific provision of the INA, *Gonzalez Lopez v. Wesling*, No. 26-cv-047-JJM-AEM, 2026 WL 309607, at *1 (D.R.I. Feb. 5, 2026), the Court begins by examining which provision applies to his current detention.

### A. Mr. Garcia da Silva's Detention and Release

Mr. Garcia da Silva argues that he is being detained unlawfully and that his detention should be classified under § 1226(a) which necessitates a bond hearing. The Government first argues that he is still being mandatorily detained under § 1225(b)(1) and that he is not owed any bond hearing or any other process. In the alternative, the Government argues that ICE "properly revoked Petitioner's Order of Supervision" under the post-removal period processes subject to § 1231. (ECF No. 4 at 1.)

Mr. Garcia da Silva was originally detained subject to § 1225(b)(1), not § 1225(b)(2) or § 1226(a). He became subject to an expedited order of removal under § 1225(b)(1) on May 21, 2018. (ECF No. 6 at 1.) The "standard mechanism for removing inadmissible noncitizens" falls under 8 U.S.C. § 1299a. *Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 58 (D.D.C. 2025). An expedited order of removal is a "streamlined form of proceeding applicable only to certain noncitizens" that bypasses proceedings before an immigration judge and limits judicial review. *See id.* at 59–60 (distinguishing the expedited removal process from the standard

3

removal process).  After an immigration officer issues a notice and order of expedited removal, the order is considered "final upon its issuance."  *See Obregon-Calcedo v. Thompson*, No. CV 25-1048 (KMW), 2025 WL 1805464, at \*2 (D.N.J. June 30, 2025).

The sole and limited exception to mandatory detention cited by the Government for a noncitizen subject to § 1225(b)(1) expedited removal is under 8 U.S.C. § 1182(d)(5)(A), which allows for a noncitizen to be paroled into the country for urgent humanitarian reasons or significant public benefit.  *See Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018) ("That express exception to detention implies that there are no *other* circumstances under which aliens detained under § 1225(b) may be released."); *De Andrade v. Moniz*, 802 F. Supp. 3d 325, 330 (D. Mass. 2025).

Typically, expedited orders of removal are carried out within "a few days or even hours." *Suarez-Lugo v. Bondi*, 819 F. Supp. 3d 653, 659 (S.D. Tex. 2026). However, that is not what occurred in Mr. Garcia da Silva's case.  Instead, he signed a Form I-220(B) and was released under an OSUP.  The Government acknowledges:

> Form I-220B is the Order of Supervision ("OSUP") used for release of noncitizens subject to a final order of release under 8 U.S.C. § 1231. *See Maceo Rodriguez by next friend Rodriguez Trujillo v. Warden*, No. 25-cv-3626-AGS-MSB, 2026 WL 768623, at \*1 (S.D. Cal. Mar. 17, 2026). ICE used Form I-220B in Petitioner's case, as opposed to parole documents; the appropriate procedural vehicle for release of a noncitizen subject to § 1225(b)(1) detention is parole under 8 U.S.C. § 1182(d)(5). *See generally De Andrade v. Moniz*, 802 F. Supp. 3d 325, 330 (D. Mass. 2025) (discussing parole in expedited removal cases and the impact of an erroneous conditional parole under 8 U.S.C. § 1226 through use of Form I-220A).

(ECF No. 4 at 2 n.1.)  Petitioner's release under § 1231 supervised release was therefore without statutory authority and contrary to § 1225(b)(1).

4

The question remains whether his release after signing a Form I-220B and his stay in the United States alters the provision under which he is detained.[2]  Petitioner offers no argument or authority for why he is no longer subject to a final order of removal under § 1225(b)(1) in his petition.  Nevertheless, the Government chose to place Mr. Garcia da Silva under post-removal supervision without the statutory authority to do so and thus must now follow its own regulations for revoking release.  The Government argues that it did so in accordance with 8 C.F.R. § 241.4(l).  Mr. Gacia da Silva argues that 8 C.F.R. § 241.13 applies and that the Government "has not met their burden to show that based on the 4 factors required in Bulle v. Wesling to re-detain a noncitizen who has been granted an Order of Supervised release, re-detention is lawful."  ECF No. 7 at 3 (citing *Bulle v. Wesling*, No. 26-CV-019-JJM-AEM, 2026 WL 183840 (D.R.I. Jan. 23, 2026)).

### B.  Revocation of Release Under Sections 241.4 & 241.13

The Government has the power to detain certain categories of noncitizens subject to a final order of removal or release them under supervision.  *See* § 1231(a)(6); *Zadvydas v. Davis*, 533 U.S. 678 (2001).  If the government releases a noncitizen on supervised release and then revokes release, it must "comport with its own procedural requirements for re-detaining the noncitizen."  *Bulle*, 2026 WL 183840, at *5 (D.R.I. Jan. 23, 2026); *see also Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023).

---

[2] Contrary to Petitioner's citation of *De Andrade* as directly applicable, the petitioner there was released under § 1226 through a Form I-220A.  *De Andrade*, 802 F. Supp. 3d at 328.

Generally, sections 241.4 and 241.13 of ICE's regulations govern the revocation of release. Revocation of supervised release under § 241.4 may be based on "either a violation of the conditions of the release or a discretionary determination by an ICE official that 'revocation is in the public interest' because, inter alia, '[t]he purposes of release have been served' or '[i]t is appropriate to enforce a removal order or to commence removal proceedings against a [noncitizen].'" *Vo v. Lyons*, No. 1:25-CV-533-JL-TSM, 2026 WL 323133, at *3 (D.N.H. Jan. 27, 2026) (citing 8 C.F.R. § 241.4(l)(1–2)). Alternatively, supervised release may be revoked under § 241.13 if "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). ICE is obligated to provide specific facts supporting "(1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." *Kong*, 62 F.4th at 619–20 (citing 8 C.F.R. § 241.13(i)(2)). Under both provisions, ICE is required to notify the noncitizen "of the reasons for revocation" and conduct an "initial informal interview promptly after [the noncitizen's] return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1); 8 C.F.R. § 241.13(i)(3).

The Government does not specify under which provision Mr. Garcia da Silva was released but now claims that his release was revoked under § 241.4(l). (ECF No. 4 at 4.) To be clear, § 241.13 applies where the "likelihood of the alien's removal in the reasonably foreseeable future" is at issue which appears to be the case here where

the only information provided about the revocation was that ICE newly had the "ability and means to effectuate" removal.  ECF No. 6-2 at 4; *see Phommachak v. Wesling*, 816 F. Supp. 3d 201, 213 (D. Mass. 2026).  But even under § 241.4, the Government's actions in revoking Petitioner's release were inadequate to satisfy due process. *See Mejia v. US Immigr. & Customs Enf't & Removal Operations*, No. 26-CV-205-LM-AJ, 2026 WL 936066, at *5 (D.N.H. Apr. 7, 2026) ("[T]he court need not resolve which regulation applies because the procedures used to revoke Mejia's release were inadequate under either regulation.")  The Government's ambiguity in articulating the legal or factual basis for its detention or release of Mr. Garcia da Silva, from its initial encounter until today, emphasizes the due process concerns at issue here. *See Vo*, 2026 WL 323133, at *4.

The only information provided to Petitioner in the Notice of Revocation of Release about his detention is a checked box under the § 241.4(l) revocation section that offers, "It is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal."  (ECF No. 6-2 at 4.)  Empty are the subsequent boxes that offer ICE an opportunity to provide substantive details such as whether a travel document has been obtained, if ICE is seeking a travel document to a specified country, or other circumstances that provide adequate notice of the reasons for revocation.

On the same Notice of Revocation of Release form, ICE is provided space to provide "Notice of Informal Interview" by providing the date of the interview.  (ECF No. 6-2.)  That space is also empty.  As is the space provided in a separate form for

7

ICE to inform Petitioner of when it expects to remove him from the country. (ECF No. 6-2 at 2.) On June 3, the very same day that ICE provided Mr. Garcia da Silva with these forms and blank spaces, it attempted to conduct the required informational interview. (ECF No. 6-2.) Petitioner sought counsel and did not make any statement. What the Court is left with is a series of questions to which no answers have been provided. *See Guzman-Valdez v. McDonald*, No. CV 25-12308-MJJ, 2025 WL 4800897, at *4 (D. Mass. Oct. 3, 2025) (finding ICE did not provide adequate "notice or a meaningfully opportunity to be heard" where a lack of details regarding informational interview left a multitude of questions); *Cherisme v. Moniz*, 814 F. Supp. 3d 120, 123 (D. Mass. 2025) (same).

"[T]he essential requirements of procedural due process include adequate notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Aponte-Rosario v. Acevedo-Vila*, 617 F.3d 1, 9 (1st Cir. 2010) (quoting *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990)). Under either section of their own regulations, ICE's conclusory explanation of its "ability and means" to effectuate removal is inadequate as it does not provide the person receiving information about their loss of liberty, adequate notice of the basis of their detention, and a meaningful opportunity to respond to the reasons provided.[3] *See Perez-Escobar v. Moniz*, 792 F.

---

[3] Although the Court finds notice inadequate under either ICE regulation, even if the Court were to only analyze the facts under § 241.4(l), only named officials in the regulation may revoke supervised release. It is unclear here whether the acting field office director has been delegated such authority. *See Vo*, 2026 WL 323133, at *4 n.16; *Mejia*, 2026 WL 936066, at *7 (finding ICE field office director lacked authority to revoke release).

8

Supp. 3d 224, 226 (D. Mass. 2025) (finding notice insufficient where ICE did not identify or support assertions for revocation of release); *Vo*, 2026 WL 323133, at \*5 (collecting cases rejecting "attempts to justify immigration detention or re-detention based on conclusory or post hoc rationales"); *Hall v. Nessinger*, C.A. No. 25-cv-667-JJM-PAS, 2026 WL 18583, at \*7 (D.R.I. Jan. 2, 2026) (collecting cases); *de Rodriquez v. Hyde*, No. 25-CV-13210-AK, 2026 WL 220416 (D. Mass. Jan. 28, 2026) (rejecting conclusory explanation stating that "the purpose of release has been served and it is appropriate to enforce the removal order.")

## III.    CONCLUSION

"In cases where due process has been violated by ICE's failure to adhere to its own regulations, courts are entitled to release a petitioner subject to the conditions of their prior release." *de Rodriquez*, 2026 WL 220416, at \*4 (collecting cases). For the foregoing reasons, the Court GRANTS Mr. Garcia da Silva's habeas petition. The Court ORDERS Petitioner to be released from detention immediately, subject to the conditions in his preexisting Order of Supervision. Per its request, the Government is permitted to transfer Mr. Garcia da Silva to ICE's Boston Field Office in Burlington, Massachusetts for the sole purpose of processing his release and allowing for any return of property.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge

July 20, 2026